IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| THE CITY OF EUFAULA, ALABAMA; EUFAULA HERITAGE ASSOCIATION; ALABAMA TRUST FOR HISTORIC PRESERVATION; and NATIONAL TRUST FOR HISTORIC PRESERVATION, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:14cv1206-MHT (WO) |
| ALABAMA DEPARTMENT OF TRANSPORTATION; JOHN R. COOPER, as Director of the Alabama Department of Transportation; FEDERAL HIGHWAY ADMINISTRATION; and MARK BARTLETT, as Division Administrator of the Federal Highway Administration, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

OPINION

This case involves a challenge to the widening from
two lanes to four lanes of a road in Eufaula, Alabama's
historic district.

The plaintiffs are the City of Eufaula and three historic preservation groups,[1] and the defendants are the Alabama Department of Transportation and its director, as well as the Federal Highway Administration and its division administrator.[2]  The plaintiffs assert that the defendants violated § 4(f) of the Department of Transportation Act (49 U.S.C. § 303),[3] § 106 of the National Historic Preservation Act (16 U.S.C. § 470f), and the National Environmental Policy Act, also known as NEPA (42 U.S.C. §§ 4321 et seq.).  The court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331.  The case where is now before this court on the plaintiffs' motion for a temporary-restraining order.

---

1. The historic preservation groups are the Eufaula Heritage Association, Alabama Trust for Historic Preservation, and the National Trust for Historic Preservation.

2. The director of the Alabama Department of Transportation is John R. Cooper.  The division administrator of the Federal Highway Administration is Mark Bartlett.

3. Essentially identical provisions are contained in § 18(a) of the Federal-Aid Highway Act (23 U.S.C. § 138), and the plaintiffs also cite to this statute.

Based on the evidence and argument submitted as of December 22, 2014, the motion will be denied.

## I.   LEGAL STANDARD

In a motion for a temporary-restraining order or preliminary injunction, the moving party must show "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011) (internal quotation marks omitted).

## II. BACKGROUND

This case arises out of the proposed widening of a 0.8 mile stretch of an Alabama road by the Alabama Department of Transportation.

The street at issue--North Eufaula Avenue--is located in Eufaula, Alabama, in the southeast part of the State. It currently is a two-lane road running through an historic district of town, with old houses lining each side and a 30-50 foot median of billowing trees that overhang the street. The street is featured in the Alabama Scenic Byway Program, which received some federal funding, and is a major source of tourism income for the city.

The street is also part of Highway 431, a thoroughfare along the eastern side of Alabama that runs to the beach in Florida. Although the highway was originally two lanes, other parts have been widened in the past several decades. Segments of the highway north and south of Eufaula were authorized for widening from two to four lanes in 1981, with construction taking place over the following 15 years. Both of those projects used federal money and complied with federal requirements. Overall, the federal government has contributed $ 47 million on 57 different projects

4

for repair and widening parts of the highway in the county in which Eufaula is located. Although federal-review documents for these projects noted that they were part of the State's long-term plan for a four-lane corridor through eastern Alabama, the federal government did not fund or approve of the North Eufaula widening in any previous review.

While much of this highway now has four lanes, North Eufaula Avenue remains two lanes, creating congestion and safety concerns according to the State. In 2005, the State first tried to solve this problem by proposing a bypass around Eufaula. For this bypass, the Federal Highway Administration completed a study on the environmental impact of the bypass and approved a request from the Alabama Department of Transportation to purchase real estate for the bypass. This bypass was never constructed due, in part, to local opposition.

Earlier this year, the State again decided to widen the 0.8 mile stretch at issue. It decided to use only

state funds on the project so that it could move "more quickly" and "more efficiently."   The State began meetings on the issue with the community starting last spring and made a final decision sometime this fall. The project was released for bidding on December 5, 2014, and the State signed a contract for construction on December 10.

Several days after the project was released for bidding, the plaintiffs brought this suit on December 8, 2014, requesting a temporary-restraining order to prevent the construction on North Eufaula Avenue. Shortly after that, the parties held an on-the-record conference call with the court on December 9, 2014, where the defendants agreed to delay groundbreaking for several weeks until the parties could submit briefs and the court could consider the arguments.

### III. DISCUSSION

The defendants allege that the plaintiffs do not meet any of the requirements for a

6

temporary-restraining order. Because the court finds that there is not a substantial likelihood of success on the merits, it need not address the other elements.

The crux of the plaintiffs' argument is that the Alabama Department of Transportation and the Federal Highway Administration violated federal law by failing to follow procedural protections required under NEPA, the National Historic Preservation Act, and the Department of Transportation Act. The state and federal governments respond that these federal protections do not apply because the widening project at issue was never a federal project and thus did not have to meet federal requirements.

NEPA's procedural protections apply to "major Federal actions significantly affecting the quality of the human environment ...." 42 U.S.C. § 4332(C). Federal regulations elaborate that, "Major Federal action includes actions with effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. They can

"include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies." 40 C.F.R. § 1508.18(a). As 40 C.F.R § 1508.18 makes clear, "major federal actions need not be federally funded to invoke NEPA requirements." Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater, 243 F.3d 270, 279 (6th Cir. 2001) (cases cited). "In effect, major federal action means that the federal government has actual power to control the project." Ross v. Fed. Highway Admin., 162 F.3d 1046, 1051 (10th Cir. 1998) (internal quotation marks omitted).

Particularly in cases where the project at issue is not federally funded, "[n]o litmus test exists to determine what constitutes major Federal action." Save Barton Creek Ass'n v. Fed. Highway Admin. (FHWA), 950 F.2d 1129, 1134 (5th Cir. 1992) (internal quotation marks omitted); see also Ross, 162 F.3d at 1053 ("We do not, however, define the precise point at which a federal project becomes immutably federal for purposes

8

of NEPA compliance."). Rather, the test requires a "situation-specific and fact-intensive analysis." Slater, 243 F.3d at 281.[4]

This fact-intensive analysis often comes down to a framing exercise. In such cases, the plaintiffs will claim that the road in question--which is only using state funds--has been "federalized" because it is actually part of a much larger project that the federal government has helped plan, execute, and fund. The States, on the other hand, will contend that the road constitutes a discrete entity, separate from other state roads that took federal money or accepted federal help. Although case law takes this framing exercise on a case-by-case basis, this court can discern several

_____

4. All parties agree that the "major federal action" test under NEPA can also be used to evaluate whether the protections in the National Historic Preservation Act and the Department of Transportation Act are triggered. Pl. Supp. Br. in Support of Mot. for TRO and/or Prelim. Inj. (doc. no. 34) at 3 n.3; State Def. Opp. to Pl. Request for Inj. Relief (doc. no. 35) at 17; Fed. Def. Mem. in Opp. to Pl. Mot. for a TRO or Prelim. Inj. (doc. no. 36) at 8-10.

circumstantial factors that indicate which frame is the correct one.

First, courts look to pretext--that is, whether a State labels something as a purely state project after facing federal rejection in the environmental-impact study. In Ross, for example, the Kansas Department of Transportation was completing a road through a major city. 162 F.3d at 1048-53. It asked the federal government to segment the project into four pieces and submitted environmental-impact statements for each. While the Highway Administration approved the first three legs, there was deadlock on the environmental impact of the fourth segment. Out of frustration, the state government declared that the last leg would be a state project and proceeded towards construction. After a challenge, the court halted the State's construction, holding that the State cannot "withdraw a portion of the project from federal funding consideration with the resulting effect of avoiding compliance with federal environmental laws." Id. at

10

1053; see also Scottsdale Mall v. Indiana, 549 F.2d 484, 487-89 (7th Cir. 1977) (rejecting a State's argument that a segment of a proposed bypass was not a major federal action where the State submitted an environmental-impact statement, the federal government approved and then backtracked, and the State then attempted to continue the project using only state funds); but see Slater, 243 F.3d at 284 n.14 (finding the project was not a major federal action even though the State had previously applied for federal interstate status but then withdrew the application because it did not want to comply with NEPA). Pretext in cases like Scottsdale Mall and Ross is a strong indicator of a major federal action because the State's submission of an impact study to get federal funds for a part of a project comes close to an admission that even the State sees the project as federal in character.

Pretext is not present in this case. Alabama did not apply for federal funds and then decide against using them once the federal government expressed

reservations about its environmental-impact statement. Unlike <u>Ross</u> and <u>Scottsdale Mall</u>, the State never submitted statements to the federal government or asked for federal funds for this portion of the highway. Admittedly, the State's explanations that it did not want to get involved in the federal process do suggest it wanted to avoid federal-environmental standards. However, a State is free to build a road using its own funds under state requirements. 23 U.S.C. § 145(a) ("The authorization of the appropriation of Federal funds or their availability for expenditure under this chapter shall in no way infringe on the sovereign rights of the States to determine which projects shall be federally financed."). The pretext problem arises only when States obviously tip their hand that they believe a road is part of a federal project by submitting an environmental impact statement and then insist it is a state project after failing the federal standards.

Second, while pretext might be the simplest indicator of a major federal action, the degree of federal involvement in a project is the most common. The federal government can be involved in a number of stages in a highway-development project including "the programming, location, design, preliminary engineering, and right of way acquisition stages." Scottsdale Mall, 549 F.2d at 489. For example, in Scottsdale Mall, the court found a segment of a larger project was a major federal action when the federal government approved the design plans, spent over $ 150,000 for an engineering study on the segment, and was scheduled to be acquired using federal money.   549 F.2d at 487-89; see also Slater, 243 F.3d at 275 n.6, 281-86 (finding that a road was not a major federal action even though the federal government approved places where the new road would cross federal highways and funded planning programs on the traffic in the area as well as an air quality study); Ross, 162 F.3d at 1048 (noting that "local, state and federal officials began planning the

13

trafficway as a jointly funded federal-aid highway project") Thompson v. Fugate, 347 F. Supp. 120, 123-24 (E.D. Va. 1972) (Merhige, J.) (concluding that a segment of a bypass around Richmond was a major federal project, in part, because the federal government approved the location of the entire bypass).

Here, the federal government did not approve the location, conduct an engineering study, plan with the State, or exercise other forms of control over the 0.8 mile stretch. Similar to Slater, it did fund small projects, such as the Alabama Scenic Byway Program, but funding a small tourist program does not equate to federal government control. The lack of federal involvement on this stretch weighs against this being a major federal action.

As the plaintiffs point out, however, the federal government did fund an environmental study of a potential bypass around Eufaula about a decade ago. The bypass would have served at least one of the same purposes as the widening of North Eufaula Avenue--to

14

decrease congestion and improve safety on the highway. Contrary to the defendants' arguments, the court believes this bypass is relevant to show some federal involvement. Indeed, if a State proposed using federal funds for a project, received a negative environmental-impact study, and then simply proposed building a new road, ten feet away, with only state money, it likely would be a major federal action. That, though, is not the case here. The State proposed the bypass ten years ago, and it was defeated because of local opposition rather than concerns over the environmental impact. Just because the federal government once offered to fund a segment of a highway does not mean that an alternative plan, proposed ten years later, constitutes a major federal action, especially when there is minimal federal-government involvement in the new plan.

The third, and final, factor is whether the segment at issue forms part of a larger coherent project. A coherent project could be based on the type of project,

such as building a major bypass around a city.  See Scottsdale Mall, 549 F.2d at 486; Fugate, 347 F. Supp. at 122-24.  It could be based on direct funding for the entire project from the federal government.  See Ross, 162 F.3d at 1052 (noting that the entire project, including the segment at issue, was funded by a single grant from Congress as a demonstration project).  Or, it could be based on how close in time different projects are designed or approved.  See, e.g., Scottsdale Mall, 549 F.2d at 486 (all parts of the bypass were planned at the same time even though the construction of the segment at issue faced a seven to eight year delay due the environmental impact study); Fugate, 347 F. Supp. at 123 (segments approved within a two-year period).  The underlying idea is that the project was conceptualized as a single unit rather than a series of discrete projects.

Based on the current evidence, this factor does not support granting the relief requested by the plaintiffs.  The widening of Highway 431 does have some

16

features of a coherent plan. On earlier projects the federal government funded along Highway 431, federal reviews noted that the widening was part of a larger project for a four-lane corridor along the eastern part of Alabama down to the beach in Florida. The federal government contributed funds to widen the highway north of Eufaula in the 1960s and 1990s and south of Eufaula in the 1960s, 1980s, and early 1990s. It spent around $ 50 million over four decades on widening and repairing the highways in Eufaula's county. At the same time, this project is more discrete than those found to be major federal projects in other cases. It did not receive a single source of funding at one time, but has been funded in parts. These discrete parts have also occurred over nearly four decades rather than within a short time span. It is also not a bypass or a wholly new project, but rather improvements on an existing road.

Weighing these three factors, the court is not convinced this 0.8 mile stretch is a major federal

17

project. There is no evidence of pretext by the State
nor has there been federal involvement at any point
over this project. Although there are some indications
that the widening of Highway 431 was a coherent
project, others indicators, including the four decade
time span, suggest otherwise. Taken together, these
factors do not show that the federal government has
"actual power to control the project." <u>Ross</u>, 162 F.3d
at 1051 (internal quotation marks omitted).

The plaintiffs also contend that to allow this
project to go forward would present an impermissible
<u>fait accompli</u>. Even if the federal government does not
have control over the project, the plaintiffs argue,
the project becomes a major federal action because it
"restrict[s] or limit[s] the federal decision-makers'
choice of reasonable alternatives when granting federal
approvals for highway construction." <u>Slater</u>, 243 F.3d
at 281-82. The concern in cases applying this theory
is that a federal agency might face such a degree of
public pressure from a state-sponsored building project

18

already underway that it cannot make a reasoned and independent decision on the federal proposal.  Id. at 280-81 (collecting cases).  For example, in Maryland Conservation Council, Inc. v. Gilchrist, 808 F.2d 1039, 1041 (4th Cir. 1986), Maryland wanted to build a new highway running through a state park with federal money although an environmental-protection organization argued that upgrading existing highways would serve the same purpose and limit any impact.  Before the federal government completed its impact study, the State allowed construction on the new highway on either side of the state park to put pressure on the federal government to approve the project.  After the environmental organization moved for an injunction, the Gilchrist court found that the highway was a major federal action and granted the injunction, holding that, "Nonfederal actors may not be permitted to evade NEPA by completing a project without an [impact study] and then presenting the responsible federal agency with a fait accompli."  Id. at 1042.

The plaintiffs contend that allowing the State to widen North Eufaula Avenue would put the federal government in a similar situation as in Gilchrist because it would have "no alternative means to connect the existing four lane termini of U.S. 431 through a project that is less environmentally damaging or otherwise preferable." Pl. Supp. Br. (doc. no. 34) at 7.  The court is not persuaded.  The theory articulated in Gilchrist applies when a project is up for approval by a federal agency and a state or city government attempts to influence the result through speeding up construction and spending a lot of money on other parts of the project that will be proverbial "roads to nowhere" should the federal government deny approval. Unlike Gilchrist, the question in this case is whether any federal agency has to grant approval for the state project.  The State is not arguing that the federal government should approve its widening project; instead, it is contending that the federal government

20

has no role to play at all.[5]  Because the widening of
North Eufaula Avenue is likely not a major federal
project, the plaintiffs do not have a substantial
likelihood of succeeding on the merits.


                              ***


     The court is sympathetic to concerns that the
States should not be able to skirt federal
environmental regulation.  Nevertheless, a State can
choose to use state funds to improve a road, even if
the reason is that the State has less regard for the
environment in relation to development.  Under federal

_____

     5.  Because the court finds that there is not a
major federal action, it need not decide whether there
has been improper segmentation by the federal
government.  See Barton Creek, 950 F.2d at 1139
(collecting cases); Macht v. Skinner, 916 F.2d 13, 16
n.4 (D.C. Cir. 1990) ("Unless a project involves a
major federal action, NEPA does not apply.  The
segmentation cases are distinguishable because they
involve the question of whether a federal project has
been illegally segmented to avoid compliance with
NEPA.") (emphasis in original), abrogated on other
grounds by Karst Envtl. Educ. & Prot., Inc. v. E.P.A.,
475 F.3d 1291, 1297 (D.C. Cir. 2007).

law, a problem arises only if the State takes advantage of federal planning, expertise, or money and then tries to avoid federal requirements.  That does not appear to be the case here.

Also, the plaintiffs present a strong argument that this historic area should not be put in jeopardy. However, in view of the fact that this is not a federal project, this is a local concern.  It should thus be resolved at the local level--that is, between the State of Alabama and the City of Eufaula.

An appropriate order will be entered separately.

DONE, this the 29th day of December, 2014.

                             /s/ Myron H. Thompson
                        UNITED STATES DISTRICT JUDGE